UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES D. KENNARD, M.D., ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-1247-G |
| INDIANAPOLIS LIFE INSURANCE | ) | |
| COMPANY, ET AL., | ) | **ECF** |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are (1) the motion of the defendant Indianapolis Life

Insurance Company ("Indianapolis Life") to dismiss one claim against it; (2) the

motion of the defendant xélan,[1] the Economic Association of Health Professionals

("Xelan") to dismiss, or in the alternative, to abate the action against it; and (3) the

motion of the defendant Benjamin Daniel Kennedy, III ("Kennedy") to dismiss for

---

[1]     In its motion this defendant refers to itself as xélan Association.  Motion
to Dismiss under Rule 12(b)(6) or, in the Alternative, to Abate at 1.  The plaintiffs
refer to this defendant as Xelan, the Economic Association of Health Professionals,
Inc.  Original Complaint ¶ 9.  The court is unsure whether the name should be
capitalized but will use the plaintiffs' convention.

lack of subject matter jurisdiction and for failure to state claims upon which relief can be granted.  For the reasons stated below, the motions are denied.

## I. BACKGROUND

This suit arises from the attempted creation of a tax shelter through the purchase of multiple insurance policies.  Charles D. Kennard is a physician residing in Texas, Original Complaint ¶ 5, who organized a professional association known as Charles D. Kennard, M.D., P.A.  *Id*. ¶ 6.  This professional association established a defined benefit plan ("Charles D. Kennard, M.D., P.A. Defined Benefit Plan" or "Kennard DBP") to provide retirement benefits for its employees and their beneficiaries.[2]  *Id*. ¶ 7.

According to the complaint, Kennedy and Xelan, acting as agents for Indianapolis Life, approached Kennard and suggested establishing the Kennard DBP.  Original Complaint ¶ 16.  Wholly funded by life insurance policies, the Kennard DBP was represented as being in compliance with Section 412(i) of the Internal Revenue Code and would provide significant tax deductions.  *Id*. ¶¶ 16, 18.  Kennard purchased these policies from Indianapolis Life and subsequently paid more than $300,000 in premiums.  *Id*. ¶¶ 19-20.

In 2004, the Internal Revenue Service ("IRS") determined that the issuance of policies similar to Kennard's constitutes a "listed transaction" and would not qualify

---

[2]      For ease of reference, all plaintiffs will collectively be referred to as "Kennard."

as a Section 412(i) plan.  Original Complaint ¶ 23.  In addition, the IRS found that

certain transactions involving these policies were not allowable as tax deductions.  *Id*.

Beyond these issues, Kennard discovered several other defects associated with the

policies.  See *id*. ¶¶ 24-26 (the policy jeopardizes the Kennard DBP's status as a

Section 412(i) plan, the policy is subject to an "excessive surrender charge," and it

has not been approved by the Texas Department of Insurance).

On June 17, 2005, Kennard filed this suit, alleging three causes of action:

rescission of the non-approved insurance policy; violations of Article 21.21 of the

Texas Insurance Code; and violations of the Texas Deceptive Trade Practices Act

("DTPA").  Docket Sheet; Original Complaint.  On August 22, 2005, Indianapolis

Life and Xelan filed these motions to dismiss, followed approximately a month later

by Kennedy's motion.  Docket Sheet.

## II. <u>ANALYSIS</u>

### A. <u>Kennedy's Motion to Dismiss or Abate</u>

Kennedy moves for dismissal under both 12(b)(1) and 12(b)(6).  Under Rule

12(b)(1), Kennedy argues that this court has no subject matter jurisdiction over this

dispute because there is neither a ripe claim, nor federal question or diversity

jurisdiction.  Defendant Benjamin Daniel Kennedy, III's Combined Original Motion

to Dismiss Claims for Lack of Subject-Matter Jurisdiction and Failure to State Claims

Upon Which Relief Can be Granted and, Alternatively, to Abate, and Brief in

Support Thereof ("Kennedy Motion") at 1.  Under Rule 12(b)(6), Kennedy argues

that the claims against him should be dismissed for failure to meet the Rule 9(b)

requirements of pleading fraud with particularity.  *Id.*  Finally, Kennedy argues that

this action should be abated because he did not receive pre-suit notice in accordance

with DTPA requirements.  *Id.*  Kennard disputes all assertions by Kennedy.  *See*

*generally* Plaintiffs' Response to Defendant Kennedy's Motion to Dismiss or, in the

Alternative, to Abate and Brief in Support Thereof ("Kennard's Kennedy Response").

The court will address each of these contentions in turn.

1.  <u>Subject Matter Jurisdiction</u>

a.  *Standard for Rule 12(b)(1) Motion to Dismiss*

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal

of a case for lack of jurisdiction over the subject matter.  *See* FED. R. CIV. P. 12(b)(1).

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction

must be considered by the court before any other challenge because "the court must

find jurisdiction before determining the validity of a claim."  *Moran v. Kingdom of*

*Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also

*Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("The requirement

that jurisdiction be established as a threshold matter . . . is inflexible and without

exception") (citation and internal quotation marks omitted).  On a Rule 12(b)(1)

motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court

is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992).  In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on:  "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413).

The standard for reviewing a motion under Rule 12(b)(1), however, depends on whether the defendant makes a facial or factual attack on the plaintiffs' complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  The defendant makes a facial attack by the mere filing of a Rule 12(b)(1) motion.  *Id.*  In that case, the trial court must look at the sufficiency of the allegations in the complaint, which are presumed to be true.  *Id.*  The defendant makes a factual attack, on the other hand, by providing affidavits, testimony, or other evidentiary materials challenging the jurisdiction of the court.  *Id.*  In a factual attack, the plaintiffs are also required to submit facts in support of jurisdiction and have the burden of proving, by a preponderance of the evidence, that the trial court has subject matter jurisdiction over

the claims. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

In the instant motion, Kennedy has presented the court with a facial attack on the standing of each plaintiff, asserting (without evidentiary support) that the court lacks subject matter jurisdiction over this dispute because the case is not ripe for resolution and there is neither federal question nor diversity jurisdiction. Kennedy Motion at 1. For the reasons discussed below, the court concludes that the instant dispute is ripe and diversity jurisdiction is present.

b. *Ripeness*

In his motion to dismiss, Kennedy argues that Kennard's claims are not yet ripe because Kennard's "legal basis for actual damages -- disqualification of the [Kennard DBP] -- is admittedly potential and unrealized." Kennedy Motion at 5. Because Kennard is currently undergoing an audit by the IRS, Kennard's Kennedy Response at 2, which has yet to disqualify the Kennard DBP, Kennedy argues that there is no ripe case or controversy. *Id*. Ripeness -- the fact that a case is neither "premature [n]or speculative" -- "is a constitutional prerequisite to the exercise of jurisdiction." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir.) (citing *United Transportation Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000), and *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)), *cert. denied*, 537 U.S. 1071 (2002). As explained below, the fact that the IRS has yet to rule on the Kennard

DBP's validity for tax deduction purposes is irrelevant; Kennard has already suffered damages and continues to incur expenses, most notably while defending his audit. *See* Affidavit of E. Philip Bush ¶¶ 4-5, *attached to* Kennard's Kennedy Response *as* Exhibit A ("Bush Affidavit") (noting that "Dr. Kennard became the subject of [an] IRS audit as a result of his reliance on advice and representations by Benjamin Daniel Kennedy, III, and others" and has subsequently incurred expenses of $40,880 as a result of this audit).[3]  These injuries are already immediate and definite, so the fact that the other damages from the IRS audit remain contingent at this time do not make this dispute premature or speculative.  See *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 371 (S.D.N.Y. 2004) (finding that the damages alleged -- fees paid to defendants, losses incurred in tax shelter transactions, expenses paid to defend audit, losses from forced sale of assets, and tax penalties -- were sufficient to satisfy ripeness requirement).  Accordingly, the court finds this case to be ripe for judicial resolution.

---

[3]      The court notes that Kennedy objects to the consideration of this affidavit in the court's determination of ripeness.  Defendant Benjamin Daniel Kennedy, III's Reply to Plaintiffs' Response to Defendant Kennedy's Combined Original Motion to Dismiss or, in the Alternative, to Abate and Brief in Support at 3. The court will look to the affidavit, though, because "[r]ipeness should be decided on the basis of all the information available to the court."  13A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE ("WRIGHT & MILLER") § 3532.1 (2d ed. 1984) at 136.

c.  *Diversity Jurisdiction*

A party attempting to invoke federal court jurisdiction bears the burden of establishing that jurisdiction. *Langley v. Jackson State University*, 14 F.3d 1070, 1073 (5th Cir.), *cert. denied*, 513 U.S. 811 (1994).  A district court has subject matter jurisdiction over an action on the grounds of diversity of citizenship when no plaintiff is a citizen of the same state as a defendant and when the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  Here, citizenship is not contested; instead, Kennedy argues that Kennard has failed to allege an amount in controversy sufficient to confer diversity jurisdiction.  Kennedy Motion at 8.

The sum claimed by a plaintiff controls the court's "amount in controversy" analysis, unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount.  See, *e.g.*, *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); see also *St. Paul Reinsurance Company, Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Allen v. R&H Oil & Gas Company*, 63 F.3d 1326, 1335 (5th Cir. 1995).  In general, the court will look to the plaintiff's complaint regarding the pleaded amount in controversy, but the court is also free to look to other information before the court, including any discovery material and affidavits. See *Diefenthal v. Civil Aeronautics Board*, 681 F.2d 1039, 1053 (5th Cir. 1982) ("the party invoking the court's jurisdiction has the burden of establishing the factual basis

of his claim by pleading or *affidavit*") (emphasis added), *cert. denied*, 459 U.S. 1107

(1983); 14B WRIGHT & MILLER § 3702 (3d ed. 1998) at 57-59 ("Typically the

district court will rely upon the pleadings, but there often is other information before

the court, such as discovery material and any affidavits . . . ."); *Cleveland Construction,*

*Inc. v. Centex Construction Company, Inc.*, No. 3:03-CV-1437-N, 2004 WL 594093, at

*2 (N.D. Tex. Mar. 24, 2004) ("the Court may consider 'summary judgment type

evidence' to determine whether the amount in controversy is sufficient for the Court

to exercise diversity jurisdiction") (quoting *Hartford Insurance Group v. Lou-Con Inc.*,

293 F.3d 908, 910 (5th Cir. 2002)).

Here, Kennard has asserted damages "totaling at least $500,000," Original

Complaint ¶¶ 37, 45, against *all* defendants, including Kennedy.  Since "the sum

claimed by the plaintiff controls if the claim is apparently made in good faith," *St.*

*Paul Mercury Indemnity Co.*, 303 U.S. at 288, Kennard has satisfactorily alleged an

amount in controversy sufficient to confer jurisdiction over this dispute.  To further

bolster this conclusion, as mentioned above, Kennard has already incurred over

$40,000 solely in professional expenses to defend an IRS audit and "will incur

substantial additional fees and expenses" as the audit continues.  Bush Affidavit ¶ 5.

This amount is independent of any damages Kennard claims as part of his suit against

all defendants which, according to the complaint, could be treble the amount of any

actual damages suffered.[4]  Original Complaint ¶¶ 20 (stating that Kennard has already spent more than $300,000 on premiums for the insurance policies from defendants), 38 & 46 (noting that, "because Defendants acted knowingly, Plaintiffs are entitled to recover treble damages").  Because diversity jurisdiction exists over this dispute, Kennedy's motion to dismiss on this ground is denied.[5]

### 2. Failure to Plead Fraud Claim with Requisite Particularity

As mentioned above, Kennedy also argues that Kennard's complaint should be dismissed for failure to meet the heightened pleading requirements of Rule 9(b), which govern claims of fraud.  Kennedy Motion at 9.  For the reasons stated below, the court disagrees.

---

[4]       Kennedy argues that the damages claimed against him "differ significantly from their separate damages allegations against" co-defendant Indianapolis Life.  Kennedy Motion at 8.  Assuming *arguendo* the truth of this assertion would not defeat jurisdiction over Kennedy.  Under the same rationale enunciated above, the court would have diversity jurisdiction over Kennedy's co-defendants and could then exercise supplemental jurisdiction over the claims against Kennedy.  *See* 28 U.S.C. § 1367(a).

[5]       Because the court finds diversity jurisdiction present in this case, it need not decide the issue of federal question jurisdiction, even though that issue was argued by the parties.  In light of existing precedent from this district, however, and the fact that the jury can decide this case without regard to the accuracy of IRS determinations, the presence of federal question jurisdiction seems unlikely.  See, *e.g.*, *Cantwell v. Deutsche Bank Securities, Inc.*, No. 3:05-CV-1378-D, 2005 WL 2296049, at *5 (N.D. Tex. Sept. 21, 2005); *Leggette v. Washington Mutual Bank, FA*, No. 3:03-CV-2909-D, 2005 WL 2679699 (N.D. Tex. Oct. 19, 2005) (explaining and applying federal "arising under" jurisdiction).

a.  *Standard for Dismissal Under Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted.  First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the nonmovants could prove no set of facts in support of their claims that would entitle them to relief.  *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994); see also *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE:  CIVIL § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied*, 459 U.S. 1105 (1983).  Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovants.  *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corporation*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 846 (5th Cir. 1991).  However, conclusory allegations and unwarranted factual deductions will not suffice to prevent a motion to dismiss.  *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

If it appears that a more carefully drafted pleading might state a claim upon which relief could be granted, the court should give the claimant an opportunity to amend his claim rather than dismiss it. *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985); *Taylor v. Dallas County Hospital District*, 976 F.Supp. 437, 438 (N.D. Tex. 1996). Furthermore, leave to amend a pleading should be freely given and should be granted unless there is some justification for refusal. *Willard*, 336 F.3d at 386.

b. *DTPA and Texas Insurance Code Claims*

Kennard has alleged claims under both the DTPA and Texas Insurance Code. *See* Original Complaint ¶¶ 31-46. Kennedy argues that these claims must be pleaded with requisite particularity to fulfill the standards of Rule 9(b), Kennedy Motion at 9, while Kennard argues that he must only satisfy Rule 8(a) pleading requirements. Kennard's Kennedy Response at 10-11. The court agrees with Kennard on this issue. Although stated in the context of a claim for negligence misrepresentation, the Fifth Circuit has declared that "Rule 9(b)'s stringent pleading requirements should not be extended to causes of action not enumerated therein," *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 668 (5th Cir. 2004). When both fraud and non-fraud claims are alleged, Rule 9(b) pleading requirements sometimes apply to both, but compliance with Rule 9(b) is required only when the non-fraud claims are "so intertwined" with the fraud averments that it is not possible to describe a simple redaction to separate the two. See *Afshar v. Norwood*, No. 3:05-CV-1625-G,

- 12 -

2005 LEXIS 33113, at *10 (N.D. Tex. Dec. 14, 2005) (Fish, C.J.) (citing *Nazareth International, Inc. v. J.C. Penney Corporation, Inc.*, No. 3:04-CV-1265-M, 2005 WL 1704793, at *3-4 (N.D. Tex. July 19, 2005) (Lynn, J.) (discussing evolution of pleading requirements for negligent misrepresentation after *Benchmark Electronics, Inc. v. J.M. Huber Corporation*, 343 F.3d 719 (5th Cir. 2003), and *American Realty*, 115 Fed. Appx. 662)).  Here, Kennard enumerates three causes of action, none of which is fraud *eo nomine*.  *See* Original Complaint ¶¶ 27-46.  With no allegations "intertwined" with those of fraud, the court finds that Rule 9(b) should not be applied to Kennard's claims under the DTPA and Texas Insurance Code.  See, *e.g.*, *Infomart (India), Pvt., Ltd. v. Metrowerks Corporation*, No. 3:04-CV-1299-N, 2005 WL 292433, at *7 (N.D. Tex. Feb. 7, 2005) (Godbey, J.) (holding that since the court could disentangle the inadequately pleaded fraud claims from the plaintiff's DTPA causes of action, the defendant was not entitled to dismissal of the plaintiff's DTPA claims for failure to meet Rule 9(b) pleading requirements).  Accordingly, Kennedy's motion to dismiss on this ground is denied.

### 3.  Lack of Pre-Suit DTPA Notice

Finally, Kennedy moves in the alternative to abate this action pending receipt of pre-suit DTPA notice.  Kennedy Motion at 14.  To discourage litigation and encourage settlement, a plaintiff claiming damages under the DTPA or the Texas Insurance Code is required to give 60 days notice of the forthcoming suit.  *Hines v.*

*Hash*, 843 S.W.2d 464, 468-69 (Tex. 1992).  If the court discovers that the plaintiff

has not complied with this notice requirement, it must abate the proceedings for 60

days.  *Id*.  This requirement is waived, though, when an impending statute of

limitations makes notice impracticable.  TEX. BUS. & COM. CODE § 17.505(b); TEX.

INS. CODE § 541.154(c)(1).  Kennard admits that he did not give notice before filing

suit, but argues that the statute of limitations exception applies.  Kennard's Kennedy

Response at 12.  In addition, Kennard notes that, subsequent to his June 17, 2005

filing of the instant action, he gave the requisite notice to all defendants.  *Id*. at 13

("On September 12, 2005, Dr. Kennard served a letter, by facsimile, upon counsel of

record for all Defendants, notifying them of Dr. Kennard's specific complaint and the

amount of economic damages and expenses, including attorneys' fees reasonably

incurred by Dr. Kennard.").  Although Kennedy did not respond to this argument,

the defendant Xelan addressed an identical contention.  Reply to Response to Motion

to Dismiss Under Rule 12(b)(6) or, in the Alternative, to Abate at 8.  Noting that it

received notice on September 12, Xelan requested that the court abate this case for

the requisite 60 days, *i.e.*, until November 11, 2005.  *Id*.  Inasmuch as this case was

automatically abated pursuant to the DTPA, *see* TEX. BUS. & COM. CODE

§ 17.505(d), (e), and the 60-day period has already expired, there is no reason to

formally abate this action.  See *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 178 (Tex.

1999).  Accordingly, Kennedy's alternative motion to abate is denied.

- 14 -

## B.  Xelan's Motion to Dismiss or Abate

Xelan has also filed a motion to dismiss Kennard's claims against it, or in the alternative to abate the action due to lack of pre-suit DTPA notice.  *See generally* Motion to Dismiss Under Rule 12(b)(6) or, in the Alternative, to Abate.  Citing similar caselaw and advancing analogous arguments, Xelan's motion presents issues identical to those advanced in Kennedy's motion.  Rather than repeating this discussion, the court refers to the previous section regarding dismissal for failure to meet Rule 9(b) pleading requirements and abatement for lack of pre-suit DTPA notice.  For the reasons stated above, Xelan's motion to dismiss or abate is also denied.

## C.  Indianapolis Life's Partial Motion to Dismiss

Indianapolis Life seeks dismissal, on three grounds, of one of Kennard's claims against it.  *See* Indianapolis Life Insurance Company's Brief in Support of Its Partial Motion to Dismiss ("Indianapolis Life Motion").  First, Indianapolis Life argues that Article 3.42 of the Texas Insurance Code does not provide for a private right of rescission as sought by Kennard.[6]  *Id.* at 2-3.  Indianapolis Life also argues that there is no Texas common law right of rescission with respect to an insurance policy.  *Id.* at

---

[6]      Article 3.42 of the Texas Insurance Code was repealed by the Texas legislature effective April 1, 2005.  Section 1701.051(a) is substantially similar to this repealed law, however.  *See* TEX. INS. CODE § 1701.051(a) ("[e]xcept as provided by Section 1701.005, an insurer may not use a document described by Section 1701.002 in this state unless the form of the document is filed with the department in accordance with this chapter").

3-5.  Finally, Indianapolis Life asserts that since Kennard has not alleged he has

suffered any damage as a result of the non-approval of the Kennard policy, the

plaintiffs have not adequately pleaded a claim for rescission.  *Id*. at 5.

Kennard does not contest Indianapolis Life's statement that Article 3.42 does

not, by its terms, provide a statutory private right of rescission.  Plaintiff's Response

to Defendant Indianapolis Life Insurance Company's Partial Motion to Dismiss, and

Brief in Support ("Kennard's Indianapolis Life Response") at 6.  Instead, Kennard

argues that Article 3.42 is a means to hold Indianapolis Life accountable for issuing

an unapproved life insurance policy.  *Id*.  Similar to other areas of Texas law,

*Springfield v. Aetna Casualty & Surety Insurance Co.*, 620 S.W.2d 557, 558 (Tex. 1981)

("insurers are required by law to use the endorsement forms prescribed by the State

Board of Insurance, and a failure to do so would subject them to an action for

revocation of their licenses"); *Commercial Assurance Co. v. Preston*, 282 S.W. 563, 565

(Tex. 1926) (quoting *Bourgeois v. Northwestern National Insurance Co.*, 57 N.W. 347,

348 (Wis. 1893), for the proposition that such board approval "aims to bring order

out of chaos" by reining in the infinite number of possible policy forms), Article 3.42

requires that insurers only issue forms that are approved by the state.  Tex. Ins. Code

Article 3.42.  Rather than basing his claim solely on Article 3.42, Kennard urges that

his common law right of rescission is derived from Article 3.42's requirement that an

insurer must provide approved forms.  Kennard's Indianapolis Life Response at 6-8.

Kennard seeks to enforce his common law right to rescission on the theory that Indianapolis Life issued an insurance policy not in compliance with the Texas Insurance Code.  Because Kennard is not actually basing his cause of action on a statutory right of rescission under Article 3.42, but instead wishes to proceed under the Texas common law, it is not clear that Texas law would afford him no relief. Indianapolis Life's motion to dismiss on this ground must therefore be denied.

Indianapolis Life's second ground assails this common law right of rescission, arguing that there is no absolute right to rescind insurance contracts in Texas. Indianapolis Life Motion at 3.  Both parties rely heavily on two Texas cases, neither of which is directly on point.  See *Urrutia v. Decker*, 992 S.W.2d 440 (Tex.), *cert. denied*, 528 U.S. 1021 (1999); see also *Mutual Life Insurance Company of New York v. Daddy$ Money, Inc.*, 646 S.W.2d 255 (Tex. App.--Dallas 1982, writ ref'd n.r.e.).  The only pertinent discussion from these cases is found in *dicta* from the Supreme Court of Texas, which offers limited guidance in this case.  Specifically, the Supreme Court of Texas noted that an "insured may, upon learning that the insurance is unapproved, elect to rescind it."  *Urrutia*, 992 S.W.2d at 443.  Indianapolis Life contends, however, that a claim for rescission does not ripen until an insurer seeks to enforce an unapproved insurance policy against the insured.  Indianapolis Life Motion at 4 (citing *Daddy$ Money, Inc.*, 646 S.W.2d at 265-57).  With no case law provided by Indianapolis Life directly supporting its argument, and the Texas Supreme Court

suggesting that a right of rescission potentially exists for insureds with unapproved insurance policies, the court turns to general Texas contract law for further guidance.

Under Texas law, the decision to grant rescission of a contract lies within the trial court's sound discretion. *Barker v. Roelke*, 105 S.W.3d 75, 84 (Tex. App.--Eastland 2003, pet. denied).  "Rescission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment." *Martin v. Cadle Company*, 133 S.W.3d 897, 903 (Tex. App.--Dallas 2004, pet. denied).  Because rescission "is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate," a court must weigh several factors to determine whether such equitable relief should be granted.  *Davis v. Estridge*, 85 S.W.3d 308, 310 (Tex. App.--Tyler 2001, pet. denied).  Specifically, the court should look to: the "probability of irreparable damage to the moving party in the absence of relief, [the] possibility of harm to the nonmoving party if the requested relief is granted, and [the] public interest." *Id*. (citing *Wenner v. Texas Lottery Commission*, 123 F.3d 321, 325 (5th Cir. 1997)).  It should be noted, however, that "[t]he right to rescind a contract may be lost by inaction and conduct showing an affirmation of the contract after a knowledge of the facts which are grounds for rescission." *Barker*, 105 S.W.3d at 84.

Here, Kennard is seeking rescission because of alleged misrepresentations by Indianapolis Life in issuing unapproved life insurance policies in the state of Texas

and Indianapolis Life's agents in marketing these insurance policies as legal tax shelters. Original Complaint ¶¶ 18, 19 & 29. Should the court grant the requested equitable relief, Indianapolis Life will no longer have a paying customer and Kennard will receive the amounts paid in premiums minus any benefit he has received. In other words, both parties will be returned to *status quo ante* and neither will be unjustly enriched as a result of the transaction. See *Boyter v. MCR Construction Co.*, 673 S.W.2d 938, 941 (Tex. App.--Dallas 1984, writ ref'd n.r.e.) ("To be entitled to the equitable remedy of rescission, . . . a party must show . . . that he and the other party are in *status quo*, *i.e.*, that he is not retaining benefits received under the instrument without restoration to the other party."). By allowing rescission of the insurance policy, a court would be upholding the public interest by assuring that policies distributed in Texas conform to the Texas Insurance Code and that if they do not, the insured will not be bound to a questionable policy, unapproved by the state. When the facts here are viewed in the light most favorable to Kennard, as they must be on a motion to dismiss, there is no indication that Kennard knew that the policy was unapproved or that the tax shelter was not legal. Since Kennard's behavior does not indicate affirmance of the unapproved insurance policy and the Texas Supreme Court has already intimated that the insured may rescind an insurance policy upon learning that the policy is unapproved, the court is unable to say that Kennard can

prove no set of facts in support of his claims that would entitle him to relief.  The motion to dismiss on this ground is accordingly denied.

The court now turns to address Indianapolis Life's third argument for dismissal: harm.  As stated above, rescission is an equitable remedy, so such relief is not granted for a mere breach of contract.  *Freyer v. Michels*, 360 S.W.2d 559, 561 (Tex. App.--Dallas 1962, writ dism'd).  Instead, a plaintiff must show that he will sustain "serious and irreparable pecuniary injury" unless rescission is granted.  *Id*. at 562.  Accordingly, Kennard must show harm in order to prevail on his claim of rescission.  Here, in addition to the $500,000 in damages alleged in the complaint, Original Complaint ¶¶ 37, 45, Kennard maintains that he is the subject of an IRS audit as a result of his reliance on Indianapolis Life's representations and that he has already incurred over $40,000 in attorney's fees.  Moreover, Kennard has already paid more than $300,000 in premiums to Indianapolis Life for insurance policies unapproved by the Texas Department of Insurance.  *Id*. ¶ 20.  Kennard has sufficiently alleged harm resulting from Indianapolis Life's representations that the policy was both approved and would function as a legal tax shelter.  Since Kennard has pleaded this element of a claim for rescission, Indianapolis Life's motion to dismiss must be denied on this ground as well.[7]

---

[7]     While Indianapolis Life may contest whether the harm alleged is sufficient to support rescission of the unapproved insurance policies, the Texas Supreme Court said in *Urrutia* (without discussion of harm to the insured) that "the

(continued...)

III.  <u>CONCLUSION</u>

For the reasons stated above, the motions are **DENIED**.

**SO ORDERED**.

March 9, 2006.

_____
A. JOE FISH
CHIEF JUDGE

---

[7](...continued)
insured may, upon learning that the insurance is unapproved, elect to rescind it."
*Urrutia*, 992 S.W.2d at 443.